# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Aseem A. **ABULKHAIR** | Civ. No. 2:16-03767-KM-JBC |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **THE OFFICE OF ATTORNEY ETHICS AND STATE OF NEW JERSEY,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (ECF No. 12) of the defendants, the State of New Jersey ("New Jersey") and the Office of Attorney Ethics (the "OAE"; collectively with New Jersey, the "State") to dismiss the Complaint (ECF No. 1) of the plaintiff, Aseem A. Abulkhair, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the State's motion to dismiss is granted and the Complaint is dismissed in its entirety.

## I.    BACKGROUND

The plaintiff, Aseem A. Abulkhair, is a resident of New Jersey. (Complaint, hereinafter "Compl.", p.1). Mr. Abulkhair brings claims under the United States Constitution and New Jersey statutory and common law against the OAE, "an agency employed by the State of New Jersey as a supervisor who[] is responsible for attorney unethical practice and misconduct" and against New Jersey as the alleged "employer" of the OAE. (Compl. ¶¶ 4–5).

Mr. Abulkhair alleges that the OAE mishandled the investigation and prosecution of grievances he filed against his former attorney,

1

William T. Smith. (Compl. ¶¶ 13–14) Mr. Abulkhair claimed Smith collected attorney's fees for representing him in three personal injury actions without a written contract, in violation of Rule 1.5c of the Rules of Professional Conduct.[1] Mr. Abulkhair also avers that Smith abandoned certain of these cases, leading to their dismissal for lack of prosecution. (*Id.* ¶ 13)

Mr. Abulkhair insists that, based on Smith's conduct, the OAE should have drawn from the New Jersey Lawyers' Fund for Client Protection Fund (the "Fund") to reimburse Mr. Abulkhair for the $10,753.50 in fees he paid to Smith. Instead, he says, the OAE struck a deal with Smith and only required him to take an educational course. (*Id.* ¶ 23) Mr. Abulkhair attributes this allegedly inequitable resolution, in part, to the fact that the attorney the OAE appointed to investigate Mr. Abulkhair's grievance, Steven Ross, maintains an office across the street from the office of a corrupt law firm.[2] He also alleges

---

[1]     Rule 1.5(c) of the New Jersey Disciplinary Rules of Professional Conduct states:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

[2]     Mr. Abulkhair alleges that the "corrupt" law firm "produced two immoral and moronic disqualified judges"—at least one of which, it seems, presided over and dismissed an action Mr. Abulkhair brought against Smith in state court. (Compl. ¶ 15) For clarity, I take judicial notice of *Abulkhair v. Toskos*, 430 F.

that Ross ignored evidence that Smith admitted to his misconduct during a trial in New Jersey state court. (*Id.* ¶¶ 18, 25)

Further, Mr. Abulkhair alleges that Ross discriminated against him based on his race, religion and the "strong language" he used in reference to state court judges. (*Id.* ¶¶ 64, 78) Mr. Abulkhair alleges that, although he responded to each of Smith's requests for documentary evidence, such as proof of payments to Smith and copies of motion papers in which (Mr. Abulkhair alleges) Smith perjured himself (*id.* ¶¶ 19, 20), Ross fabricated facts in his report to the OAE on Mr. Abulkhair's grievance. These fabricated facts, Mr. Abulkhair alleges, protected and benefitted Smith. (*Id.* ¶ 64)

Mr. Abulkhair says he formally objected to the OAE's handling of his grievance against Smith and demanded that the OAE secure for him reimbursement of the $10,753.50 he paid to Smith. (*Id.* ¶ 24) But, he says, another OAE-appointed investigator, Paula Granuzzo, also ignored evidence and neglected to take appropriate action. (*Id.* ¶ 25) The matter was closed on May 5, 2016. (*Id.* ¶ 26)

The primary purpose of this lawsuit seems to be the recoupment of the fees Mr. Abulkhair paid Smith. He alleges that the OAE's "arbitrary action . . . jeopardized his property interest in his legitimate reimbursement and compensation of his loss" and also subjected him to fear of losing his rights to reimbursement and to the burden of filing this lawsuit. (*Id.* ¶ 65) In his brief in opposition to this motion, Mr. Abulkhair contends he has a right to reimbursement pursuant to Rule 1:28 of the New Jersey Rules of Court. (Abulkhair's Brief in Opposition (ECF No. 13,

---

App'x 98 (3d Cir. 2011) (discussing Abulkhair's claims against New Jersey Superior Court Judge Toskos for failure to recuse himself and conspiracy claims against Smith and his law firm and affirming district court's dismissal of complaint for lack of federal jurisdiction and for failure to state a claim).

hereinafter "Opp.") 2)[3]

---

[3]     This rule directs the Supreme Court of New Jersey to appoint seven trustees to administer and operate the Fund, N.J.Ct. R. 1:28-1(a), and also provides in relevant part:

> The trustees in their sole discretion but on the affirmative vote of 4 of them shall determine which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement. In making such determinations the trustees shall consider, among other appropriate factors, the following:
>
> > **(1)** The amounts available and likely to become available to the Fund for the payment of claims and the size and number of claims which are likely to be presented;
> >
> > **(2)** The amount of the claimant's loss as compared with the amount of losses sustained by other eligible claimants;
> >
> > **(3)** The degree of hardship suffered by the claimant as a result of the loss;
> >
> > **(4)** The degree of negligence, if any, of the claimant which may have contributed to the loss;
> >
> > **(5)** The potential for recovery from a collateral source.

*Id.* 1:28-3(b). For a claim to be "eligible," the attorney about whom a claim is submitted must have "been suspended, disbarred or placed in disability inactive status, [] resigned with prejudice or [] pleaded guilty to, or been convicted of embezzlement or misappropriation of money or other property; or an ethics committee [must have] certified a claim to the trustees as an appropriate matter for their consideration." *Id.* 1-28:3(2). Or, "[w]here an ethics committee does not act and an attorney cannot be located, is deceased or incapacitated, the trustees may consider timely application directly provided that the trustees find that the claim is an appropriate matter for their consideration[.]" *Id.*

The State argues that this rule does not create a right to reimbursement and therefore is not a basis for a claim of deprivation of due process. (Opp. 18-19) I agree. *See GE Capital Mortg. Servs., Inc. v. New Jersey Title Ins. Co.*, 333 N.J. Super. 1, 5, 754 A.2d 558, 560 (App. Div. 2000) ("[T]he [New Jersey] Supreme Court is vested with exclusive authority over the regulation of the Bar. Pursuant to this authority, the Court created the Fund for the express purpose of reimbursing, to a certain extent, the losses caused by the dishonest conduct of members of the New Jersey bar. *R.* 1:28-1(a). Notably, though, the Court mandated that '[n]o claimant or any other person or organization shall have any

4

Further, Mr. Abulkhair alleges that because the OAE's "actions or inactions and statements within their fabricated reports" implicitly questioned the credibility of Mr. Abulkhair's claims against Smith, the State deprived him of "his reputation as an honest citizen." (*Id.* ¶ 66)

Mr. Abulkhair's complaint asserts the following causes of action:[4]

(1) deprivation of his Fourteenth Amendment right to equal protection, in violation of 42 U.S.C. § 1983 ("Section 1983") (*Id.* ¶¶27–53, 56, 60, 63–67);

(2) deprivation of his Fourteenth Amendment right to due process, in violation of 42 U.S.C. § 1983 (*id.* ¶¶47–53, 56, 60, 63–67);

(3) conspiracy to deprive Mr. Abulkhair of equal protection under the Fourteenth Amendment, in violation of 42 U.S.C. § 1985 ("Section 1985") (*id.* ¶¶ 68–71);

(4) race-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (*id.* ¶¶ 72–73);

(5) race-based discrimination in violation of the New Jersey law Against Discrimination ("NJLAD") (*id.*);

---

right in the Fund as beneficiary or otherwise.' *R.* 1:28-3(d). Rather, the Court directed it would be within the 'sole discretion' of the seven trustees appointed to administer and operate the Fund to determine 'which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement.' *R.* 1:28-3(b)." (citations omitted)); *cf. Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756, 125 S. Ct. 2796, 2803 (2005) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (internal quotation marks and citations omitted)).

Nevertheless, the issue is moot because Mr. Abulkhair's Constitutional claims are barred by the Eleventh Amendment. *See* discussion *infra*.

[4]     Several of the "counts" Mr. Abulkhair sets forth in the complaint allege duplicative or multiple causes of action. Here, I have listed each cause of action separately.

(6) religious discrimination in violation of the First Amendment (*id.* ¶¶ 75–76);

(7) religious discrimination in violation of the NJLAD (*id.*);

(8) retaliation against Mr. Abulkhair in response to his "strong language" against judges, in violation of the First Amendment (*id.* ¶¶ 78–79);[5]

(9) intentional infliction of emotional distress (*id.* ¶ 61); and

(10) negligent infliction of emotional distress (*id.* ¶¶ 81–84);[6]

Mr. Abulkhair asks for damages, injunctive relief, and costs. (*Id.* pp. 16–17)[7]

## II.   LEGAL STANDARDS

The State moves to dismiss only under Rule 12(b)(6) of the Federal Rules of Civil Procedure. I will also apply Rule 12(b)(1), because the

---

[5]    Mr. Abulkhair does not cite the statutory vehicle through which he brings his First Amendment claims (Counts 6 and 8 described in text). I construe them as Section 1983 claims. *See Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695 (1979) ("It is for violations of . . . constitutional and statutory rights that 42 U.S.C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.").

[6]    In a jurisdictional statement in the Complaint, Mr. Abulkhair also purports to bring claims under the Americans with Disabilities Act ("ADA") and for violation of Professional Rule of Conduct 1.5(c). In the section of the Complaint dedicated to setting forth causes of action, however, Mr. Abulkhair abandons these claims, and the Complaint lacks any factual allegations that would support them.

[7]    Specifically, he requests (1) damages not less than the $10,753.50 in fees he paid to Smith; (2) the return of all "extorted money/property" seized by the State; (3) injunctive relief to compel the State to compensate Mr. Abulkhair for the loss of his grievance case; (4) injunctive relief prohibiting the State from depriving other aggrieved victims of their rights; (5) reasonable costs and fees pursuant to 42 U.S.C. § 1988; (6) all costs and expenses stemming from the State's actions; (7) exemplary and punitive damages to deter the State from engaging in wrongful conduct in the future; and (8) other relief as justice requires. (*Id.* pp. 16–17)

State's argument that Eleventh Amendment principles of sovereign immunity bar Mr. Abulkhair's claims implicates the Court's subject matter jurisdiction.

## A. Rule 12(b)(6) Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

As the Third Circuit instructed post-*Iqbal*, "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Iqbal*, 556 U.S. at 662). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 555).

A plaintiff alleging a conspiracy must plead more than "vague inferences and allegations." *Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F. App'x 167, 169 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 556). "Bare assertions of joint action or a conspiracy are not sufficient to survive dismissal at the pleading stage." *Id.* Rather, the plaintiff must "demonstrate[] the existence of any concerted effort" among the defendants. *Id.*

Mr. Abulkhair is appearing *pro se*. A *pro se* complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nevertheless, it must meet some minimal standard. "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### B. Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. See 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing

that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Id.*

I construe the State's argument that it is immune from suit based on the Eleventh Amendment to be a facial challenge to the Complaint's jurisdictional basis. Accordingly, as under Rule 12(b)(6), the Court will take the allegations of the Complaint as true. *See Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

## III.   DISCUSSION

The government moves to dismiss the Complaint under the Eleventh Amendment's grant of sovereign immunity to state actors and also on the ground that it is devoid of substantive factual allegations. Because I find that Mr. Abulkhair's Section 1983, Section 1985, and state law claims are all barred by the Eleventh Amendment, this Court lacks subject matter jurisdiction to hear all but Mr. Abulkhair's Title VII discrimination claim. As to that claim, because the Complaint does not allege the most basic elements of a Title VII violation, I find that it fails to state any plausible claim for relief.

### A. Rule 12(b)(1): Eleventh Amendment Sovereign Immunity

The State argues that it has sovereign immunity from the Section 1983, Section 1985, and New Jersey common law tort claims. I agree. I also find that the State has sovereign immunity from the NJLAD claims.

The Eleventh Amendment to the Constitution, which is of jurisdictional stature, renders the States immune from certain claims in federal court: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Despite the limited scope of its wording, the Eleventh Amendment has for over a century been held to incorporate a more general principle of sovereign immunity. In general, it bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Kelley v. Edison Twp.*, No. 03-4817, 2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890).

"Eleventh Amendment immunity extends to the state's agencies or departments, provided that the state is the real party interest." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 250 (3d Cir. 2005) In *Johnson v. State of N.J.*, Judge Wolin determined, as a matter of first impression, that the New Jersey Superior Court is an "'arm' of the state entitled to share in the state's sovereign immunity." 869 F. Supp. 289, 296–98 (D.N.J. 1994) (also finding "that the Administrative Office of the Courts can cloak itself in the state's sovereign immunity under the Eleventh Amendment"). And in *Hunter v. Supreme Court of New Jersey*, Judge Bassler held that both the Supreme Court of New Jersey and its Advisory Committee on Judicial Conduct "enjoy Eleventh Amendment Immunity." *Hunter v. Supreme Court of New Jersey*, 951 F. Supp. 1161, 1177 (D.N.J. 1996), *aff'd sub nom. Hunter v. Supreme Court of N.J.*, 118 F.3d 1575 (3d Cir. 1997).

Since then, judges in this district and elsewhere have consistently considered the OAE, as a creation of the New Jersey court system, to be one such "arm" of the state that enjoys sovereign immunity. *See, e.g., Prall v. Supreme Court*, No. CIV. 11-7004 JBS, 2013 WL 1405880, at *7

(D.N.J. Apr. 4, 2013) ("[T]he Eleventh Amendment prohibits actions against state courts. The Superior Court of New Jersey and its vicinages have been found to be part of the judicial branch of the State of New Jersey, and are thus protected by the Eleventh Amendment. . . . Moreover, [the OAE is an] "arm[]" of the Supreme Court of New Jersey and likewise [is] entitled to share in the[] state's sovereign immunity."); *Cox v. Office of Attorney Ethics of the Supreme Court of New Jersey*, No. CIV. 05-1608 (AET), 2006 WL 3833470, at *4 (D.N.J. Dec. 29, 2006) (holding the OAE immune from NJLAD claims); *Feng Li v. Rabner*, No. 15-CV-2484 KBF, 2015 WL 1822795, at *3 (S.D.N.Y. Apr. 22, 2015) (Eleventh Amendment barred Section 1983 claims against the OAE Disciplinary Review Board), *aff'd*, 643 F. App'x 57 (2d Cir. 2016).

"There are three primary exceptions to Eleventh Amendment immunity: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 252 (3d Cir. 2005) Here, Mr. Abulkhair does not name as a defendant or otherwise assert any claims against individual state officers. Therefore, the Eleventh Amendment bars his federal claims unless Congress has abrogated the State's sovereign immunity or the State has waived its sovereign immunity.

### i. Section 1983 and 1985 Claims

With respect to Mr. Abulkhair's federal claims, he sues under Sections 1983 and 1985. Congress has overridden a state's sovereign immunity in certain statutes, but it did not do so when it enacted Sections 1983 and 1985. *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (because the Civil Rights Act of 1871 did not abrogate the states' sovereign immunity, a Section 1983 action barred); *Gary v. Pennsylvania Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012)

(sovereign immunity barred federal claims, which included a Section 1985 claim, against a state agency); *Muhammad v. Dempsey*, No. 3:11-CV-350, 2011 WL 4905513, at *3 (M.D. Pa. Oct. 14, 2011) ("[T]he Supreme Court has rejected the idea that the Eleventh Amendment does not apply to § 1983, and this would logically apply to § 1985 as well, because both statutes are part of the Reconstruction Civil Rights Acts and were passed with the same congressional intent." (citing *Quern,* 440 U.S. at 345)), *aff'd*, 531 F. App'x 216 (3d Cir. 2013); *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) ("Nor has Congress expressly abrogated New Jersey's immunity from suit under § 1985(3). Therefore, New Jersey is immune from suit under that section.").

Closely related is the principle that State entities are not "persons" who may be subject to liability under Sections 1983 and 1985. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67-71, 109 S. Ct. 2304, 2310-2312 (1989); *see also New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, No. CIV.A.09-683 (KSH), 2010 WL 2674565, at *6 (D.N.J. June 30, 2010) ("The Court agrees with the State Defendants that 'persons' in § 1983 and 'persons' in § 1985 have the same meaning. Thus, because 'two or more *persons*' must conspire to be liable under § 1985, and because states and state officials sued in their official capacities are not 'persons' and cannot be liable under § 1983, they cannot be liable under § 1985 either." (citations omitted)).

New Jersey has not waived its sovereign immunity with respect to Sections 1983 and 1985. In *Hyatt v. County of Passaic*, addressing a Section 1983 claim against Passaic County, the United States Court of Appeals for the Third Circuit explained:

> States may waive immunity by unequivocally expressing consent to suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The [New Jersey Tort Claims Act], which

> allows suits against public entities and their
> employees in state courts, does not expressly
> consent to suit in federal courts and thus is not
> an Eleventh Amendment waiver. *See* N.J. Stat.
> Ann. § 59:2–2(a)

340 F. App'x 833, 837 (3d Cir. 2009). *See also Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) ("The New Jersey Tort Claims Act does not mention the State's liability [under Section 1985] in federal court, and this Court is not aware of any other provision of law that might do so. *See* N.J. Stat. Ann. §§ 59:1 to:14.").

Accordingly, I conclude that this federal district court lacks jurisdiction. The Eleventh Amendment bars this court from hearing Mr. Abulkhair's Section 1983 and 1985 claims.

### ii. NJLAD and Infliction of Emotional Distress

Sovereign immunity may bar state-law claims, too. Even where jurisdiction is otherwise proper, the Eleventh Amendment denies a federal court jurisdiction to hear state-law claims that a state or its agencies violated state law. *See Pennhurst State School & Hosp.*, 465 U.S. at 121.

With respect to the NJLAD, the State argues only that the Complaint fails to state a claim. But the NJLAD counts in the Complaint suffer from a still more basic infirmity: New Jersey has not waived its sovereign immunity from NJLAD claims. *See Heine v. Comm'r of The Dep't of Cmty. Affairs of the State of New Jersey*, No. 2:11-5347 (KM)(JBC), 2016 WL 7042069, at *8 (D.N.J. Dec. 1, 2016) (finding NJLAD claim barred by the Eleventh Amendment); *Heine v. Comm'r of Dep't of Cmty. Affairs of New Jersey*, No. CIV. 2:11-5347 KM, 2014 WL 4199203, at *5 (D.N.J. Aug. 22, 2014) ("Other judges of these Courts have persuasively held that, at least where the state is not sued in its capacity as an employer, New Jersey has not waived sovereign immunity in the NJLAD." (citing *Rudolph v. Adamar of New Jersey, Inc.*, 153 F. Supp. 2d

528, 542 (D.N.J. 2001));[8] *Cox*, 2006 WL 3833470, at *4 (holding the OAE immune from NJLAD claims); *Garcia*, 210 F. Supp. 2d at 550 ("[A] plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court. Although the NJLAD clearly identifies the State as a potential defendant, *see* N.J. Stat. Ann. § 10:5–5(e), and authorizes private suits "in Superior Court," *id.* § 10:5–13, it makes no mention of federal court."). Therefore, the Eleventh Amendment bars NJLAD claims and I need not reach whether the Complaint actually states a claim for relief.

The Eleventh Amendment's grant of sovereign immunity applies to state common law causes of action as well, *see College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 355 n.1 (3d Cir. 1997) (noting that a claim of common law unfair competition "obviously could not be asserted successfully [against an instrumentality of the state] in light of the Eleventh Amendment"), *aff'd*, 527 U.S. 666 (1999); *Doe v. Division of Youth & Family Servs.*, 148 F. Supp. 2d 462, 492 (D.N.J. 2001) (common law negligence claim barred by the Eleventh Amendment), including claims that fall within the limits of the New Jersey Tort Claims Act.

Although Mr. Abulkhair's Complaint makes no mention of the New Jersey Tort Claims Act (the "TCA"), the TCA necessarily affects his claims for infliction of emotional distress, because it provides that public entities can be sued only for certain torts, and under certain conditions. *See Fuchilla v. Layman,* 109 N.J. 319, 339, 537 A.2d 652 (1988) (Handler, J.,

---

[8]     In *Rudolph*, Judge Orlofsky cited State cases for the proposition that "[s]uits brought against the State as an employer are clearly within the scope of the explicit waiver of sovereign immunity contained in N.J.S.A. § 10:5–5(e); §§ 10:5–12(a),(c)." 153 F. Supp. 2d at 542. Mr. Abulkhair is not employed by the State, and he does not sue the State as his employer. At any rate, in *Garcia*, 210 F. Supp. 2d at 550 n.4, Judge Orlofsky cautioned that his dicta in *Rudolph* should not be taken out of context. *Rudolph*, he wrote, did not stand for any general principle "that the State of New Jersey had waived its sovereign immunity in federal court when acting as an employer." *Id.*

concurring) (noting that "public entities shall only be liable for their negligence within the limitations of the Torts Claim Act"); N.J. Stat. Ann. § 59:1-2 (West) ("[It] is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.").[9]

Subject to certain conditions, then, the TCA "expressly waives sovereign immunity as to certain claims." *Warnett v. Corr. Med. Servs.*, No. CIV. A. 07-1291 JHR, 2008 WL 930739, at *6 (D.N.J. Mar. 31, 2008). For several reasons, however, that waiver does not encompass Mr. Abulkhair's claims here.

Most broadly, the Third Circuit, albeit in a non-precedential opinion, stated that "[t]he TCA, which allows suits against public entities and their employees in state courts, does *not* expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver." *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (non-precedential) (emphasis added). Even setting that aside, the TCA retains the State's sovereign immunity from Mr. Abulkhair's intentional infliction of emotional distress claim; "[c]ourts in this District have interpreted Section 59:2-10 of the [TCA] to bar public entities [as opposed to public employees] from liability for claims of intentional torts, including claims for intentional infliction of emotional distress." *Id.* at *7 (citation omitted); *see also Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999)

---

[9]    The New Jersey legislature specifically enacted the TCA to address "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity," while also recognizing the prerogatives of the sovereign:

> While a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done.

N.J. Stat. Ann. § 59:1-2 (West).

("N.J.Stat.Ann. 59:2–10 provides that '[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct.'").

As to the claim of negligent infliction of emotional distress, the TCA also fails to articulate any clear waiver. Under the TCA, public entities are generally immune from liability for an injury arising out of an act or omission of the public entity, a public employee, or any other person. N.J.S.A. 59:2–1; *Greenway Dev. Co., Inc. v. Borough of Paramus,* 163 N.J. 546, 552, 750 A.2d 764 (2000).

Even setting aside such generic immunity for classes of claims, the State is entitled to, and did, prescribe the procedural preconditions to a suit against itself. Mr. Abulkhair's claims would also fail for lack of compliance with the TCA's notice requirement. As a New Jersey appellate court has explained:

> In enacting the TCA, the Legislature intended to "provide a comprehensive scheme for adjudicating tort claims against public entities." *Fuchilla v. Layman,* 109 *N.J.* 319, 333, 537 *A.2d* 652, 659, *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). Under the TCA, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." *N.J.S.A.* 59:3-1(a).

> Included in the statutory scheme within which to assert a tort claim against a public entity are notice requirements, which are a jurisdictional precondition to filing suit." *Bonitsis v. N.J. Inst. of Tech.,* 363 *N.J.Super.* 505, 516, 833 *A.2d* 679, 685 (App.Div.2003).

> . . . . The [New Jersey Supreme] Court [has] held that the notice provisions of the TCA apply to intentional, as well as negligent conduct.

*Ptaszynski v. Uwaneme,* 371 N.J. Super. 333, 343–44, 853 A.2d 288, 294 (App. Div. 2004).

There is nothing in Mr. Abulkhair's Complaint setting forth any factual allegation as to a notice of tort claim. *Queensbury v. Petrone*, No. 14-CV-7230 RMB/AMD, 2015 WL 4715323, at *5 (D.N.J. Aug. 7, 2015) (dismissing tort claims for failure to file the requisite notice under the TCA); *see also* N.J.S.A. §§ 59:8–3, 59:8–8 (requiring notice of tort claim to be filed with public entity within 90 days of accrual and permitting claimant to file suit only after the expiration of six months from the day the public entity receives the notice). Assuming the other grounds for dismissal can be overcome, however, if a notice of claim was filed, Mr. Albukhair can so allege in an amended pleading.

Thus, on multiple grounds, this Court lacks jurisdiction over Abulkhair's infliction of emotional distress claims.[10]

---

[10] Moreover, Mr. Abulkhair's intentional infliction of emotional distress claim would fail under Rule 12(b)(6) because he does not plausibly allege that he has suffered any emotional distress "so severe that no reasonable person could be expected to endure it." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 587, 969 A.2d 1097, 1115 (2009) ("[T]he court decides whether as a matter of law such emotional distress can be found . . . ." (citation omitted)); *see also Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366, 544 A.2d 857, 863 (1988) ("Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.").

Likewise, the complaint is completely devoid of allegations giving rise to a claim for negligent infliction of emotional distress. *Cf. Jablonowska v. Suther*, 195 N.J. 91, 103–104, 948 A.2d 610, 617–18 (2008) ("A plaintiff now can maintain an independent cause of action for negligent infliction of emotional distress where (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress. . . . [or where a] plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness.").

### iii. Mr. Abulkhair's Challenges to Application of the Eleventh Amendment

Mr. Abulkhair uses his opposing brief to fling insults against the State; against various members of, and courts within, the New Jersey and federal judiciary; and against the legal profession generally.[11] He also raises a host of legal theories that would appear to have no basis. From this collection of allegations, I am able to glean four arguments as to why, according to Mr. Abulkhair, his constitutional claims must survive Rule 12(b)(1) scrutiny.

First, Mr. Abulkhair argues that New Jersey never ratified the Eleventh Amendment. (Opp. 11) He cites no case law for this principle— only an exhibited copy of a webpage that reports which of the states *did* ratify the Eleventh Amendment. (*See* Opp. Ex. A-3) New Jersey is absent from this list.

Mr. Abulkhair's argument may furnish the answer to a constitutional trivia question, but it has no legal consequences. The Eleventh Amendment is alive and well in the jurisprudence of federal courts addressing claims against New Jersey, as much of the case law cited in this opinion demonstrates. *See also, e.g., Duhne v. State of New Jersey*, 251 U.S. 311, 313, 40 S. Ct. 154 (1920); *Meyer v. State of N. J.*, 460 F.2d 1252, 1253 (3d Cir. 1972) ("The Eleventh Amendment to the Constitution bars an action for money damages in a federal court against the State. . . . The State of New Jersey cannot be sued under the Civil Rights Act, 42 U.S.C. § 1983.") (citations and quotations omitted);

---

[11]     The State asks me to strike or decline to consider portions of Mr. Abulkhair's opposition brief that use "scandalous and abusive language." (State's Reply (ECF No. 14, hereinafter, "Reply") 3) Mr. Abulkhair's sharp language does not affect the issues to be decided, but it does convey the intensity of this *pro se* litigant's sense of grievance. I therefore see no need to strike it.

    The parties also quibble over the timing and service of their motion papers. (Opp. 2–3; Reply 1–2) Because I consider the State's moving and reply brief and Mr. Abulkhair's opposing brief in full, there is also no reason to resolve this dispute.

*Citizens' Comm. for Envtl. Prot. v. U. S. Coast Guard*, 456 F. Supp. 101, 112 (D.N.J. 1978) ("The State of New Jersey may not be sued without its consent in a federal trial court by one of its own citizens under the Eleventh Amendment"). More generally, individual States are not permitted to opt out of parts of the Constitution that they did not vote for; an amendment, once duly ratified, becomes part of the Constitution, and binds all of the States. *See* U.S. Const., art. V ("amendments . . . shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three fourths of the several states, or by conventions in three fourths thereof...."); *Harris v. Soto*, No. CV162551KMJBC, 2016 WL 7391037, at *4 (D.N.J. Dec. 21, 2016) (McNulty, J.) (rejecting the argument that New Jersey's failure to ratify renders the Eleventh Amendment inapplicable).

Second, Mr. Abulkhair argues that because he seeks reimbursement from the Fund, rather than from the treasury of New Jersey, the Eleventh Amendment does not apply. (Opp. 19) It is true that the Fund is not sourced from New Jersey's general treasury but from fees collected annually from licensed attorneys. *See* N.J. Ct. R. 1:28-2(a). Mr. Abulkhair also correctly observes that one factor courts consider when deciding whether an entity partakes of the State's sovereign immunity is "whether or not any damage award against the agency would be paid from the state's coffers." *Johnson v. State of N.J.*, 869 F. Supp. 289, 297 (D.N.J. 1994).

But this funding factor is just one of three, all of which receive equal weight in the sovereign immunity analysis, *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007), and the case law has consistently held that the OAE be treated as an arm of the State for Eleventh Amendment purposes. I am persuaded by this authority, and I do not regard this as an open issue. *See supra* p. 10–11.

19

The issue is not altered by re-characterizing the monetary relief sought as an injunction requiring the OAE to find in Abulkhair's favor or to pay him. (*See* Compl. p. 17 (requesting "an injunction relief [sic] to compel the Defendants to compensate [Abulkhair] for the loss of his (3) meritorious cases due to dishonest conduct committed by their member of the Bar." (brackets in original) (*See also* n.3, *supra*.) "[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity." *Cory v. White*, 457 U.S. 85, 91, 102 S. Ct. 2325, 2328–29 (1982). The United States Supreme Court has expressly rejected the notion that "the Eleventh Amendment never applies unless a judgment for money payable from the state treasury is sought." *Id.* "It would be a novel proposition indeed," the Court reasoned in *Cory v. White*, "that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought." *Id.* at 2329. Rather, "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S. Ct. 900, 909 (1984) (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted))).

Third, in so many words, Mr. Abulkhair argues that because the State acts through natural persons, it must itself be regarded as a "person" for purposes of Section 1983. (*Id.* 20) And fourth, Mr. Abulkhair contends that the Fourteenth Amendment's guarantee of rights superseded the Eleventh Amendment's grant of immunity. (Opp. 23) Again, he cites no case law to support his arguments and the cases cited above belie them.

### iv. Title VII

The Eleventh Amendment, however, does not remove this Court's jurisdiction over Mr. Albukyair's claim under Title VII of the Civil Rights Act of 1964 that the State discriminated against him based on race. (This is listed as claim no. 4, *see* p. 5, *supra*.) The United States Supreme Court has held that Congress, when it enacted Title VII, purposely abrogated the states' sovereign immunity. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 457, 96 S. Ct. 2666, 2672 (1976); *Patterson v. PA Office of Inspector Gen.*, 243 F. App'x 695, 696 (3d Cir. 2007) (non-precedential) ("[I]t is true that Congress abrogated the states' Eleventh Amendment immunity in passing Title VII.").

*　　*　　*

In sum, then, all of the claims asserted in the Complaint, except the Title VII claim, are dismissed for lack of subject matter jurisdiction.

### B. Rule 12(b)(6): Title VII Discrimination Claims

As noted above, only one cause of action remains: Mr. Abulkhair's claim of racial discrimination under Title VII of the Civil Rights Act of 1964. (*See* claim no. 4, listed at p. 5, *supra*.) I therefore consider whether, for purposes of Fed. R. Civ. P. 12(b)(6), the Complaint states a viable Title VII claim.

As the Third Circuit Court of Appeals has explained,

> Title VII prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." 42 U.S.C.2000e-2(a)(1). A plaintiff carries the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case, [a plaintiff] must demonstrate that: 1) she belongs to a protected class; 2) she was qualified for the position; 3) she was subject to an adverse employment action; and 4) the

> adverse action was under circumstances giving
> rise to an inference of discrimination. *Sarullo v.
> U.S. Postal Serv.,* 352 F.3d 789, 797 (3d
> Cir.2003). If [the plaintiff] establishes a prima
> facie case, the State must provide a legitimate,
> non-discriminatory reason for the adverse
> employment action. *Jones v. Sch. Dist. of
> Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999). If
> the State is able to proffer such a reason, [the
> plaintiff] must show that it is a pretext for
> discrimination. *Id.*

*Shahin v. Delaware,* 424 F. App'x 90, 92–93 (3d Cir. 2011).

Mr. Abulkhair's Complaint says nothing about employment. It does not indicate whether Mr. Abulkhair was employed at all, let alone employed by the State. It focuses solely on his dissatisfaction with the OAE's handling of his grievance against his attorney, Smith. Accordingly, Mr. Abulkhair has failed to allege any plausible basis for relief under Title VII.

The State also argues that Mr. Abulkhair has not stated a claim under Title II of the ADA. (State's Brief (ECF No. 12-2) 23 & n.3) As noted at n.5, *supra,* I do not think Mr. Abulkhair intended to state a claim under the ADA. To the extent he did, however, I would agree with the State.[12] The Complaint contains no reasonably specific factual allegation that Mr. Abulkhair is disabled. *See generally* 42 U.S.C. § 12101 *et seq.* The only arguable exception is one vague, passing reference that contains no facts. (*See* Compl. ¶ 53 (alleging "[e]very Defendant in their official capacity knowingly, or grossly negligently . . . discriminat[ed] and

---

[12]    Congress abrogated Eleventh Amendment immunity in Title II of the ADA—at least to the extent a plaintiff states a claim for actual violations of rights guaranteed under the Fourteenth Amendment. *United States v. Georgia,* 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"); *see also Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 556 (3d Cir. 2007) (*amended on reh'g* Mar. 8, 2007); *Gattuso v. New Jersey Dep't of Human Servs.,* 881 F. Supp. 2d 639, 647–48 (D.N.J. 2012).

ignor[ed] Plaintiff's disability barrier from the beginning and retaliating against him thereafter . . . ")

The conclusory statements in this Complaint fall far short of the *Iqbal* and *Twombly* pleading standard. That is as true here as it was in *Abulkhair v. U.S. Postal Service*, 610 F. App'x 96, 97 (3d Cir. 2015) ("The complaint fails to rise above general allegations and conjecture to offer any factual allegations that could plausibly support Abulkhair's alleged tort claims."); *Abulkhair v. President of U.S.*, 494 F. App'x 226, 230 (3d Cir. 2012) ("Abulkhair's conclusory statements that only Muslims experienced delays was not enough to state a claim under the Fifth Amendment."); and *Abulkhair v. Bush*, 413 F. App'x 502, 507 (3d Cir. 2011) ("As in *Iqbal*, Abulkhair's conclusory assertions against the federal officials have not 'nudged [his] claims of invidious discrimination across the line from conceivable to plausible,' so as to be entitled to a presumption of truth, as is required to survive a motion to dismiss." (citing *Iqbal*, 129 S. Ct. at 1950–51)).

Accordingly, I will dismiss Mr. Abulkhair's Title VII claim (and, to the extent it may have been intended, his ADA claim) for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).

## IV.   CONCLUSION

For the foregoing reasons, the State's motion to dismiss the complaint is **GRANTED** and the complaint is **DISMISSED**. This dismissal is **WITH PREJUDICE** as to the Court's lack of jurisdiction under Rule 12(b)(1). As to the failure to state a claim under Rule 12(b)(6), the dismissal is **WITHOUT PREJUDICE** to the filing of a proposed amended complaint within 30 days.

Dated: May 24, 2017

**KEVIN MCNULTY**
**United States District Judge**