NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ASSEM A. ABULKHAIR,

                  Plaintiff,

      vs.

THE OFFICE OF ATTORNEY
ETHICS, THE STATE OF NEW
JERSEY, CHARLES CENTINARO,
STEVEN P. ROSS, PAULA T.
GRANUZZO,

           Defendants.

Civ. No. 2:16-cv-3767-KM-JBC

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the motion (ECF No. 36) of defendants to dismiss the complaint of plaintiff, Assem A. Abulkhair, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Also before the court is plaintiff Abulkhair's cross-motion for default judgment and to strike defendants' answer. (ECF No. 40). For the reasons set forth below, the defendants' motion to dismiss the amended complaint is granted; Mr. Abulkhair's cross-motion is denied.

## I.    BACKGROUND[1]

### A. Factual History

Plaintiff Assem A. Abulkhair is a resident of New Jersey, and a frequent litigant in this Court.[2] (AC ¶ 1). The original complaint, now dismissed, brought claims against the Office of Attorney Ethics ("OAE"), which disciplines attorneys for professional misconduct and the State of New Jersey. The amended complaint adds three individuals: Charles Centinaro, the Director of the OAE; Steven P. Ross, an investigator for the OAE; and Paula T. Granuzzo, also an investigator for the OAE. (AC ¶¶ 4-8).

Mr. Abulkhair was represented in state court civil litigation by William T. Smith, Esq., of the Hook, Smith & Meyer law firm. (AC ¶ 16). Smith allegedly engaged in the "unethical, unprofessional practice and misconduct of mishandling [Mr. Abulkhair's] three (3) personal injury cases." (AC ¶ 16). Mr. Abulkhair alleges that Smith lost one case on summary judgment, failed to file for a default judgment when a defendant did not answer a complaint, and had two cases dismissed for failure to prosecute. (AC ¶ 16). Mr. Abulkhair claims that Smith was "ripping him off and extorting the trust deposit and experts' fees in the amount of $10,753.50" without a written contract, in violation of Rule 1.5c of the Rules of Professional Misconduct.[3] (AC ¶ 16).

---

[1]    Plaintiff's allegations are taken as true at the motion to dismiss stage. Citations to the amended complaint (ECF No. 21) are abbreviated as "AC."

[2]    A search of the docket for "Assem A. Abulkhair" yielded 21 separate cases filed in this District.

[3]    Rule 1.5(c) of the New Jersey Disciplinary Rules of Professional Conduct states:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a

Mr. Abulkhair alleges that the OAE mishandled the investigation and prosecution of grievances he filed against Mr. Smith. He insists that, based on Mr. Smith's conduct, the OAE should have drawn from the New Jersey Lawyers' Fund for Client Protection ("the Fund") to reimburse Mr. Abulkhair for the $10,753.50 in fees he paid to Smith, plus the damages he believes he would have received from his three personal injury cases. (AC ¶¶ 79-84). Instead, he says, the OAE struck a deal with Smith and only required him to take a remedial educational course. (AC ¶¶ 69-70, 84). Mr. Abulkhair alleges that this outcome bespeaks discrimination by the State of New Jersey, the OAE, the Director of the OAE, and the investigating attorneys appointed to the matter. (AC ¶ 83).

Mr. Abulkhair claims that the first person the OAE appointed to investigate his grievance, Steven Ross, did not properly pursue the matter. (AC ¶¶ 6, 17-77). Ross allegedly worked across the street from a "corrupt" law firm, asked questions about his disability, retaliated against him because of his "strong language" against judges and the judicial system, and discriminated against him on the basis of religion, race, and disability. (AC ¶¶ 18-35). Abulkhair alleges that Ross ignored evidence of Smith's misconduct and "made up 'facts.'" (AC ¶¶ 17, 31-34, 59-61).

Mr. Abulkhair formally objected to the OAE's handling of his grievance and demanded that the OAE compensate him for the money he paid Smith. (AC ¶¶ 71-72). The OAE then appointed another investigator, Paula T. Granuzzo, to review Ross's report. (AC ¶ 73). The amended complaint alleges that Granuzzo also ignored evidence and neglected to take appropriate actions. (AC ¶¶ 73-77). It also alleges that Charles Centinaro, the Director of the OAE, supervised, ordered, and commanded the investigation to "get even" with Mr. Abulkhair. (AC ¶ 78). Mr. Abulkhair's OAE matter was dismissed on May 5, 2016. (AC

---

contingent fee matter, the lawyer shall provide the client
with a written statement stating the outcome of the matter
and, if there is a recovery, showing the remittance to the
client and the method of its determination.

¶ 85). Mr. Abulkhair claims that he was deprived of his right to reimbursement from the Fund pursuant to Rule 1:28. (AC ¶¶ 80-82).

On September 11, 2015, Abulkhair "served his tort notice upon Defendants by mail and fax, which was publish[ed] in many overseas newspapers [in] Arabic and English." (AC ¶ 86). He claims that the defendants did not respond. (AC ¶ 88).

### B. Brief Procedural History

Mr. Abulkhair filed his initial complaint on June 15, 2016 against the State of New Jersey and the OAE. (ECF No. 1). He was granted in forma pauperis status on June 28, 2016. (ECF No. 2). The State and the OAE filed a motion to dismiss on September 22, 2016. (ECF No. 12). I issued an opinion and order dismissing the original complaint on May 24, 2017. (ECF Nos. 16 & 17); *Abulkhair v. Office of Attorney Ethics*, No. 2:16-cv-3767, 2017 WL 2268322 (D.N.J. May 24, 2017). The dismissal was with prejudice as to the Court's lack of jurisdiction under Rule 12(b)(1)—i.e., with regard to the State and the OAE's sovereign immunity, as to which amendment would be futile. *Abulkhair*, 2017 WL 2268322, at *13. The dismissal was without prejudice as to the failure to state a claim under Rule 12(b)(6). *Id.*

Mr. Abulkhair filed an amended complaint on June 23, 2017 against the State of New Jersey, the OAE, Charles Centinaro, Steven Ross, and Paula Granuzzo. (ECF No. 21). Defendants moved to dismiss the amended complaint on September 21, 2017. (ECF No. 36). On October 2, 2017, Mr. Abulkhair filed a motion for leave to enter a default and motion to strike based on defendants' alleged failure to file a timely answer. (ECF No. 40).

### C. Causes of Action and Request Sought

Mr. Abulkhair alleges several causes of action in the amended complaint, which all appear to be against all defendants—i.e., the State of New Jersey, the OAE, Charles Centinaro, Steven Ross, and Paula Granuzzo. They are as

follows:[4]

- Deprivation of his Fourteenth Amendment right to equal protection in violation of 42 U.S.C. § 1983 ("Section 1983") (AC ¶¶ 97-34)
- Deprivation of his Fourteenth Amendment right to due process in violation of Section 1983 (AC ¶¶ 117-34)
- Conspiracy to deprive him of equal protection and civil rights under the Fourteenth Amendment in violation of 42 U.S.C. § 1985 (AC ¶¶ 141-45)
- Race-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (AC ¶¶ 146-47)
- Religious discrimination in violation of the First Amendment and the New Jersey Law Against Discrimination ("NJLAD") (AC ¶¶ 148-50)
- First Amendment retaliation (AC ¶¶ 135-40)
- Disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA") (AC ¶¶ 154 61)
- Negligent infliction of emotional distress (AC ¶¶ 162-66).

Mr. Abulkhair asks for damages "not less than his recoupment entitlement of his own money in the amount of $10,753.50"; an order that defendants return all of Abulkhair's "extorted trust/property seized by them through their dishonest Attorney Smith"; "injunctive relief" ordering defendants to compensate Abulkhair for the loss of his three "meritorious" personal-injury cases; $900,000.00 in compensatory damages for discrimination and retaliation; an order enjoining/restraining defendants from further acts of discrimination and retaliation; a permanent injunction prohibiting the defendants from engaging in unconstitutional action; all costs and expenses arising from defendants' actions; interest, costs, and reasonable legal fees; "any and all other remedies" pursuant to 42 U.S.C. § 1983 and the ADA; punitive damages; and other relief as justice requires. (AC ¶¶ 167-77 & pp. 37-39).

## II.   LEGAL STANDARDS
### A. Rule 12(b)(6) Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in

---

[4]   Several of the counts Mr. Abulkhair sets forth in the amended complaint allege duplicative or multiple causes of action, which I have attempted to consolidate in a list.

part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

As the Third Circuit instructed post-*Iqbal*, "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A plaintiff alleging a conspiracy must plead more than "vague inferences and allegations." *Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F. App'x 167, 169 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 556). "Bare assertions of joint action or a conspiracy are not sufficient to survive dismissal at the pleading stage." *Id.* Rather, the plaintiff must "demonstrate[] the existence of any concerted effort" among the defendants. *Id.*

Mr. Abulkhair is appearing *pro se*. A *pro se* complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, it must meet some minimal standard. "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### B. Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. See 2 James Wm. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Id.*

I construe the defendants' argument that they are immune from suit based on the Eleventh Amendment to be a facial challenge to the amended complaint's jurisdictional basis. Accordingly, as under Rule 12(b)(6), the court will take the well-pleaded factual allegations of the amended complaint as true.

*See Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

### III. MOTION TO DISMISS

#### A. Earlier Dismissals with Prejudice/Jurisdiction

Mr. Abulkhair's amended complaint asserts ten counts against the State of New Jersey and the OAE. Eight of these causes of action were dismissed with prejudice, as against the State and the OAE, in a previous opinion, on sovereign immunity grounds. These causes of action include deprivation of his Fourteenth Amendment right to equal protection in violation of Section 1983; deprivation of his Fourteenth Amendment right to due process in violation of Section 1983; conspiracy to deprive him of equal protection under the Fourteenth Amendment in violation of Section 1983; race-based discrimination in violation of the NJLAD; religious discrimination in violation of the First Amendment; religious discrimination in violation of the NJLAD; retaliation in response to Mr. Abulkhair's "strong language" against judges in violation of the First Amendment; intentional infliction of emotional distress; and negligent infliction of emotional distress. *Abulkhair v. Office of Attorney Ethics,* No. 2:16-cv-3767, 2017 WL 2268322, at *3, 5-11, 13 (D.N.J. May 24, 2017).

Once a cause of action has been dismissed "with prejudice," a plaintiff cannot file the same cause of action against the same defendant. *See Rotante v. Franklin Lakes Bd. of Educ.*, No. 13-cv-3380, 2014 WL 6609034, at *4, *6 (D.N.J. Nov. 20, 2014); *cf. Batista v. Countrywide Home Loans, Inc.*, No. 15-cv-4522, 2015 WL 4022080, at *2 (D.N.J. June 29, 2015). When an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits involving the same parties. *See Batista*, 2015 WL 4022080, at *2; *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 247 (3d Cir. 2010).

I entered the earlier dismissal with prejudice because I considered amendment to be futile. Mr. Abulkhair nevertheless included similar claims in the amended complaint. Out of caution, I have reviewed the amended complaint's claims under 42 U.S.C. §§ 1983 and 1985, as well as the state law

claims. Nothing about the restatement of these claims in the amended complaint remedies the jurisdictional defects of the original complaint. For the reasons expressed in my earlier Opinion, those claims are again dismissed as against the State of New Jersey and the OAE, with prejudice. *See Abulkhair*, 2017 WL 2268322, at *5-*11.

What remain, then, after these initial jurisdictional dismissals, are the following: against all defendants, claims under Title VII and ADA; against Centinaro, Ross, and Granuzzo only, claims of violation of due process, equal protection, conspiracy to deprive civil rights, First Amendment, the NJLAD religious discrimination, First Amendment retaliation, and negligent infliction of emotional distress.

### B. Prospective Injunctive Relief

Mr. Abulkhair's demands for relief include prospective injunctive relief. He does not, however, allege factually any ongoing violation of federal law. Rather, he claims that he was denied reimbursement from the Fund and that the sanctions imposed on his former attorney, Smith, were inadequate. This suggests a one-time injury, redressable in damages, not one appropriate for an injunction. Mr. Abulkhair's request for prospective injunctive relief is therefore dismissed for failure to state a claim, against all defendants.

In addition, to the extent these claims may seek alternative injunctive relief, they still would not avoid the Eleventh Amendment bar. Under the exception of *Ex parte Young,* the Eleventh Amendment permits a suit for prospective injunctive relief against state officials. To determine whether *Ex parte Young* applies, a court conducts a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)). These claims do not allege an ongoing violation of federal law; they seek reimbursement and damages. As pointed out previously, a plaintiff cannot

9

"re-characteriz[e] the monetary relief sought as an injunction" or declaratory relief. *See Abulkhair,* 2017 WL 2268322, at *11.

### C. Constitutional Claims Other Than First Amendment Claims[5]

In his amended complaint, Mr. Abulkhair asserts several non-First Amendment constitutional claims against Centinaro, Ross, and Granuzzo. These claims allege violations of due process and equal protection in violation of 42 U.S.C. § 1983, as well as a conspiracy to deprive him of civil rights in violation of 42 U.S.C. § 1985.

#### i. Individual vs. Official Capacity

Defendants argue that these claims should be dismissed against Centinaro, Ross, and Granuzzo because of Eleventh Amendment ∘overeign immunity. It is true that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). A suit against a state official in his or her official capacity is thus "no different from a suit against the State itself" and sovereign immunity thus bars suits for damages. *Id.* (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978)). In short, as to these persons in their official capacities, the Eleventh Amendment bars these claims, just as it did as to the State and the OAE. The claims against Centinaro, Ross, and Granuzzo in their official capacities are therefore dismissed.

Mr. Abulkhair does not specify whether he sues Centinaro, Ross, and Granuzzo in their individual capacities. However, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (internal quotation marks omitted); *Vandy v. Millard,* No. 5-cv-3970, 2007 WL 894212, at *1 (D.N.J. Mar. 20, 2007); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be

---

[5]     Mr. Abulkhair's First Amendment claims are addressed in subsections III.E–F, *infra.* This subsection addresses other claims under 42 U.S.C. §§ 1983, 1985.

construed as to do justice."). I will therefore do as the court did in *Bacon v. Sherrer*.

> The complaint does not specify whether Defendants are being sued in their official or individual capacities. Because pro se complaints should be construed liberally, the Court assumes that [Plaintiff] is seeking compensatory and punitive damages from Defendants in their individual capacity and injunctive and declaratory relief from Defendants in their official capacity.

No. 6-cv-504, 2008 WL 906233, at 2 n.2 (D.N.J. Apr. 1, 2008).

I will consider Mr. Abulkhair's non-First Amendment constitutional claims for damages as being asserted against Centinaro, Ross, and Granuzzo, in their individual capacities.

### ii. Constitutional Claims For Damages Against Centinaro, Ross, and Granuzzo in Their Individual Capacities

#### 1. Due Process Claim

Mr. Abulkhair claims to have been denied dues process because the OAE did not reimburse him for attorney Smith's alleged negligence in accordance with New Jersey Court Rule 1:28. Rule 1:28 does not, however, create a right or entitlement to reimbursement. Rather, the rule directs the Supreme Court of New Jersey to appoint seven trustees to administer and operate the Fund, N.J. Ct. R. 1:28-1(a), and grants them discretion to provide reimbursement under certain specified circumstances:

> The trustees in their sole discretion but on the affirmative vote of 4 of them shall determine which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement. In making such determinations the trustees shall consider, among other appropriate factors, the following:
>
> > **(1)** The amounts available and likely to become available to the Fund for the payment of claims and the size and number of claims which are likely to be presented;
> >
> > **(2)** The amount of the claimant's loss as compared with the amount of losses sustained by other eligible claimants;

11

**(3)** The degree of hardship suffered by the claimant as a result of the loss;

**(4)** The degree of negligence, if any, of the claimant which may have contributed to the loss;

**(5)** The potential for recovery from a collateral source.

*Id.* 1:28-3(b).

For a claim to be "eligible," the attorney about whom a claim is submitted must have "been suspended, disbarred or placed in disability inactive status, [] resigned with prejudice or [] pleaded guilty to, or been convicted of embezzlement or misappropriation of money or other property; or an ethics committee [must have] certified a claim to the trustees as an appropriate matter for their consideration." *Id.* 1-28:3(a)(2). "Where an ethics committee does not act and an attorney cannot be located, is deceased or incapacitated, the trustees may consider timely application directly provided that the trustees find that the claim is an appropriate matter for their consideration[.]" *Id.*

The New Jersey Superior Court Appellate Division has elaborated thus:

> [T]he [New Jersey] Supreme Court is vested with exclusive authority over the regulation of the Bar. Pursuant to this authority, the Court created the Fund for the express purpose of reimbursing, to a certain extent, the losses caused by the dishonest conduct of members of the New Jersey bar. Notably, though, the Court mandated that '[n]o claimant or any other person or organization shall have any right in the Fund as beneficiary or otherwise.' Rather, the Court directed it would be within the 'sole discretion' of the seven trustees appointed to administer and operate the Fund to determine 'which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement.'

*GE Capital Mortg. Servs., Inc. v. New Jersey Title Ins. Co.*, 754 A.2d 558, 560 (N.J. Super. Ct. App. Div. 2000) (internal citations omitted)

Rule 1:28 does not create a right to reimbursement and thus Mr. Abulkhair does not have a due process claim for the "denial of reimbursement." He does not have a property interest in the benefits. They are awarded solely at

the discretion of the trustees of the Fund. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (internal quotation marks and citations omitted)).

And not only are such payments discretionary; they are not even potentially awarded unless an attorney has been disbarred, subjected to certain other sanctions, or certified to the Fund's trust by an ethics committee. N.J. Ct. R. 1-28:3(a)(2). The amended complaint does not state that Mr. Smith was disbarred, suspended or placed on disability inactive status; that he resigned with prejudice or pled guilty to embezzlement or misappropriation of money; or that an ethics committee certified a claim to the Fund's trustees for consideration. No such prerequisites have been alleged and therefore it does not appear that this claim was eligible for compensation under the Fund's rules. *See* N.J. Ct. R. 1-28:3(a)(2).

Mr. Abulkhair's claim to have been deprived of an award without due process is therefore dismissed.

### 2. Equal Protection Claim

Mr. Abulkhair claims that defendants discriminated against him based on his race, religion, and disability, in violation of the Fourteenth Amendment. I consider these equal protection claims for damages against Centinaro, Ross and Granuzzo in their individual capacities.

To state an equal protection claim, a plaintiff must allege, and ultimately prove, "intentional discrimination." *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015) (citing *Washington v. Davis*, 426 U.S. 229, 241 (1976); *Pers. Adm'r of Mass. v. Feeny*, 442 U.S. 256, 276 (1979)). Plaintiff's membership in a protected class must have been "a substantial factor in th[e] different treatment." *Id.* (citing *Davis*, 426 U.S. at 235).

13

Regarding race, religion, and disability discrimination, the amended complaint fails to state a plausible claim. The amended complaint notes that Mr. Abulkhair is of the Muslim faith and that he walks with a limp, using a cane. (AC ¶¶ 18, 89, 149). One of the investigators, Ross, allegedly asked Mr. Abulkhair a few questions about his disability. (AC ¶¶ 18-23). These facts alone do not give rise to an inference of intentional discrimination by Centinaro, Ross and Granuzzo. First, Mr. Abulkhair makes no specific, non-conclusory allegations regarding race, religion, or disability with respect to Centinaro or Granuzzo at all. Second, Mr. Abulkhair's sole factual allegations against Ross are that Ross noticed that Mr. Abulkhair walks with a cane and a limp, and asked him a few questions about it. (AC ¶¶ 18-23). Ross was evaluating whether to recommend disbursing money from the Fund to Mr. Abulkhair. The selection criteria include the degree of hardship faced by the claimant. (N.J. Ct. R. 1:28-1(a)(3)). Mr. Abulkhair's injuries also related to the personal-injury lawsuit that formed the basis of his OAE grievance. (AC ¶ 19). No plausible inference of discrimination arises from Mr. Ross having briefly inquired about these facts; such inquiries were part of his job.

Voicing a grievance and identifying the protected status of the plaintiff is not enough, standing alone, to support an inference of intentional discrimination. *See Collick v. William Patterson Univ.*, No. 16-cv-471, 2016 WL 6824374, at *13 (D.N.J. Nov. 17, 2016), *aff'd in part, remanded in part by*, 699 F. App'x 129 (3d Cir. 2017); *cf. Hassan*, 804 F.3d at 294. The equal protection claim is dismissed.

### 3. Section 1985 Claim

The amended complaint also alleges that defendants conspired to deprive Mr. Abulkhair of his civil rights in violation of 42 U.S.C. § 1985.

First, for the reasons stated above, Mr. Abulkhair has not alleged a cognizable violation of a constitutional right that would furnish an actionable conspiratorial object. "Section 1985(3) ... *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined

14

federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 336, 376 (1979); *see also Mucci v. Moonachie Bd. of Educ.*, No. 83-cv-4442, 1985 WL 56602, at *3 (D.N.J. Feb. 21, 1985).

Second, Mr. Abulkhair has not alleged facts supporting the existence of a conspiratorial agreement. *See Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). "[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (citation omitted). The amended complaint contains no non-conclusory factual statements that suggest in any way that the defendants made an agreement or engaged in concerted action to deprive him of civil rights. Rather, Mr. Abulkhair concludes that there must have been a conspiracy to deny him a disbursement from the Fund because he did not receive money from the Fund.

The claims based on section 1985 are dismissed for failure to state a claim.

### D. Title VII Claim

Mr. Abulkhair asserts a Title VII claim against all defendants. As stated in my earlier opinion, the Eleventh Amendment immunity does not apply; Congress purposely abrogated state sovereign immunity when it enacted Title VII of the Civil Rights Act of 1964. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 457 (1976); *see also Patterson v. PA Office of Inspector Gen.*, 243 F. App'x 695, 696 (3d Cir. 2007).

I will therefore consider whether Mr. Abulkhair's Title VII allegations state a claim under Rule 12(b)(6). A Title VII claim is subject to the familiar tripartite *McDonnell Douglas* analysis:

> Title VII prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." 42

15

U.S.C. 2000e–2(a)(1). A plaintiff carries the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case, [a plaintiff] must demonstrate that: 1) she belongs to a protected class; 2) she was qualified for the position; 3) she was subject to an adverse employment action; and 4) the adverse action was under circumstances giving rise to an inference of discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). If [the plaintiff] establishes a prima facie case, the [defendant] must provide a legitimate, non-discriminatory reason for the adverse employment action. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). If the [defendant] is able to proffer such a reason, [the plaintiff] must show that it is a pretext for discrimination. *Id.*

*Shahin v. Delaware*, 424 F. App'x 90, 92-93 (3d Cir. 2011).

The claim fails at the outset. Title VII prohibits discriminatory *employment* practices. Mr. Abulkhair's amended complaint makes no allegations about employment at all. He does not state that he was employed by any of the defendants. Rather, his amended complaint focuses solely on how the State, the OAE, and the individual defendants allegedly mishandled his grievance with attorney Smith.

The Title VII claims are therefore dismissed for failure to state a claim.

### E. Religious Discrimination in Violation of the First Amendment and the NJLAD

Mr. Abulkhair fails to state a § 1983 claim under the First Amendment or a claim under the NJLAD because the amended complaint contains no specific factual allegations that give rise to an inference of religious discrimination. The amended complaint does allege generally that "[D]efendants' denial of recoupment and compensation would not be decided except for Abulkhair's disability, 'strong language,' and prejudice[] against his Islamic faith." (AC ¶ 149).

Once again, however, it is not sufficient merely to voice a grievance and state that one is a member of a protected class; facts giving rise to a reasonable

16

inference of discrimination must be pled. "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Iqbal*, 556 U.S. at 678). To prevent dismissal, all civil complaints must set forth "sufficient factual matter" to show that the claim is facially plausible. *Id.* (citing *Iqbal*, 556 U.S. at 677). Mr. Abulkhair's amended complaint contains no factual allegations supporting an inference of discrimination; it merely states a grievance and attributes it to Mr. Abulkhair's faith. That allegation lacks sufficient factual content to survive a motion to dismiss either a First Amendment § 1983 claim or a parallel NJLAD claim.

In addition, as noted above, the Eleventh Amendment would bar Mr. Abulkhair's First Amendment and NJLAD claims insofar as they are asserted against the State, the OAE, and the three individual defendants in their official capacities. New Jersey, too, has not waived its sovereign immunity regarding NJLAD claims, except where the State is sued in its capacity as an employer. *See Heine v. Comm'r of the Dep't of Cmty Affairs*, No. 2:11-cv-5347, 2016 WL 7042069, at *8 (D.N.J. Dec. 1, 2016) (finding NJLAD claims barred by the Eleventh Amendment); *Heine v. Comm'r of the Dep't of Cmty Affairs*, No. 2:11-cv-5347, 2014 WL 4199203, at *5 (D.N.J. Aug. 22, 2014) ("Other judges of these Courts have persuasively held that, at least where the state is not sued in its capacity as an employer, New Jersey has not waived sovereign immunity in the NJLAD." (citing *Rudolph v. Adamar of New Jersey, Inc.*, 153 F. Supp. 2d 528, 542 (D.N.J. 2001)); *see also Cox v. Office of Att'y Ethics*, No. 5-cv-1608, 2006 WL 3833470, at *4 (D.N.J. Dec. 29, 2006) (finding that the OAE is immune from NJLAD claims). As noted above, the amended complaint contains no allegation that any defendant employed the plaintiff.

The amended complaint therefore fails to allege an actionable First Amendment or NJLAD claim for religious discrimination. Those claims are dismissed.

### F. First Amendment Retaliation Claim

To plead a retaliation claim under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Once again, there is an Eleventh Amendment bar to the claims as against the State, the OAE, and the individual defendants in their official capacities. Even as to those defendants in their individual capacities, however, the complaint does not state a retaliation claim.

Mr. Abulkhair alleges that he used "strong language" to criticize the judicial system and the "judges" in particular. (AC ¶ 27). He alleges that Ross was "'stunned and appalled' towards Abulkhair's 'strong language' against the judges and the system" and therefore discriminated against him. (AC ¶ 28). In his report to the OAE, allegedly noted that Mr. Abulkhair used "strong language" against the judiciary. (AC ¶ 31).

Mr. Abulkhair fails to adequately plead that there was a connection between his statements and some retaliatory action. True, using intemperate language cannot be punished. By the same token, however, it does not immunize a person against any and all adverse rulings on the merits.

Mr. Abulkhair's complaint to the OAE primarily implicated his attorney; the OAE does not investigate judges. He  submitted a complaint to the OAE regarding attorney Smith, the complaint was investigated, and Smith was ordered to attend a remedial legal education course as a result. (AC ¶¶ 83-85). That does not plausibly bespeak retaliation for speaking disrespectfully of

judges; Mr. Abulkhair's complaint against an attorney resulted in consequences to the attorney. Mr. Abulkhair argues that the consequences should have been more severe and that he should have been compensated. But no plausible connection drawn between Mr. Abulkhair's statements to the investigator and the OAE's ultimate ruling. Being "appalled" by intemperate language (an understandable reaction) is very different from discriminating against a viewpoint, or against speech in general. At any rate, a complainant does not, by virtue of intemperate speech, gain some kind of upper hand in an OAE investigation. Nor is it plausibly alleged that the OAE's action against Smith in this case would tend to deter a person of reasonable firmness from verbally abusing the judiciary if he wished to do so.[6]

For these reasons, Mr. Abulkhair's First Amendment retaliation claim is dismissed.

### G. ADA Claim

Title II of the ADA prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that individual's disability. 42 U.S.C. § 12132; *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998). "[I]nsofar as Title II creates a private right of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 158-59 (2006).

In *Baxter v. Pa. Dep't of Corr.*, the Third Circuit has articulated an analytical framework for claims against states under Title II of the ADA. 661 F. App'x 754, 756 (3d Cir. 2016). First, determine if the alleged conduct states a claim under Title II. *Id.* If it does, determine if the alleged conduct also violates the Fourteenth Amendment. *Id.* If the alleged conduct violates the ADA and the Fourteenth Amendment, the individual can sue the state despite state sovereign immunity. *Id.* If the alleged conduct does not violate the Fourteenth

---

[6]      For what it is worth, the descriptions of the State judges in the amended complaint would tend to confirm that Mr. Abulkhair was not in fact deterred.

Amendment, the district court must determine whether Congress's purported abrogation of state sovereign immunity is nonetheless valid. *Id.*; *see United States v. Georgia*, 546 U.S. at 159; *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). The Third Circuit has found that, at least as applied to education, Congress is within its constitutional authority to abrogate sovereign immunity under Title II of the ADA, even for conduct that falls short of a violation of the Fourteenth Amendment. *Bowers*, 475 F.3d at 555-56.

To establish a prima facie case under Title II of the ADA, the plaintiff must show that (1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Disability Rights New Jersey, Inc. v. Comm'r*, 796 F.3d 293, 301 (3d Cir. 2015).

There is no obvious or intuitive inference that the OAE would discriminate against someone with a leg injury. In the amended complaint, Mr. Abulkhair alleges that Ross, the investigator for the OAE, noticed his disability and asked him "a bunch of cocktail questions regarding [his] visible disability." (AC ¶ 18). Ross "observed … Abulkhair entering his office l[i]mping and walking with a cane." (AC ¶ 18). Ross asked whether the disability was caused by an injury related to the personal-injury suits, asked about his surgeries, and inquired as to the date he became disabled. (AC ¶¶ 19-20). Ross also asked Abulkhair how much he received from Social Security. (AC ¶¶ 20-23). Abulkhair alleges that Ross's line of questioning was discriminatory and too personal; he claims that this shows that defendants discriminated against him. (AC ¶¶ 23-25).

Mr. Abulkhair's amended complaint fails to state a claim because he does not state factual allegations suggesting that he was subjected to discrimination "by reason of his … disability." *See Disability Rights New Jersey, Inc.*, 796 F.3d at 301 n.3. Mr. Abulkhair's alleged disability was caused by an

injury from automobile accidents. (AC ¶ 19). It was the injury-causing accident or accidents, and Smith's representation of him in the resulting personal-injury suits, that formed the very basis of Mr. Abulkhair's complaint to the OAE. (AC ¶ 19). The amended complaint It alleges that Investigator Ross asked Mr. Abulkhair a few questions about his disability. That disability, however, was central to Mr. Abulkhair's complaint to the OAE. That complaint arose from the personal injury lawsuit, and Rule 1:28 instructs the OAE to consider the hardship faced by each complainant. N.J. Ct. R. 1:28-3(b). That Ross asked some questions, given the context, does not support an inference that he intended to discriminate. Regarding Centinaro and Granuzzo, the complaint does not state any specific factual matter at all.

Moreover, Mr. Abulkhair does not plead facts supporting any inference of discrimination by a public entity. As discussed above, Mr. Abulkhair filed a complaint against an attorney, the OAE investigated the grievance, and the attorney received a consequence as a result. That Mr. Abulkhair wanted the attorney to suffer a greater consequence, or that he felt he should have received a financial benefit, does not in itself evince disability-based discrimination.

The conclusory statements in this amended complaint fall far short of the *Iqbal* and *Twombly* pleading standard. The ADA claim is dismissed.

### H. Negligent Infliction of Emotional Distress

I begin with an additional word about the Eleventh Amendment's grant of sovereign immunity in relation to state common law tort causes of action, including claims that fall within the limits of the New Jersey Tort Claims Act ("NJTCA"). *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 355 n.1 (3d Cir. 1997) (noting that a claim of common law unfair competition "obviously could not be asserted successfully [against an instrumentality of the state] in light of the Eleventh Amendment"), *aff'd*, 527 U.S. 666 (1999); *Doe v. Division of Youth & Family Servs.*, 148 F. Supp. 2d 462, 492 (D.N.J. 2001) (finding that a common law negligence claim was barred by the Eleventh Amendment). Sovereign immunity would bar a

21

federal court tort claim for damages against the State, the OAE, and the individuals in their individual capacities.

That immunity has not been waived. True, the NJTCA provides that public entities can be sued for certain torts, under certain conditions. *See Fuchilla v. Layman*, 537 A.2d 652 (N.J. 1988) (Handler, J., concurring) (noting that "public entities shall only be liable for their *negligence* within the limitations of [the Tort Claims Act]"); N.J. Stat. Ann. § 59:1-2 ("[It] is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein."). Indeed, the NJTCA "expressly waives sovereign immunity as to certain claims." *Warnett v. Corr. Med. Servs.*, No. 7-cv-1291, 2008 WL 930739, at *6 (D.N.J. Mar. 31, 2008). That waiver, however, does not encompass Mr. Abulkhair's assertion of a claim of negligent infliction of emotional distress *in federal court*. The Third Circuit has held that "[t]he [NJ]TCA ... does *not* expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver." *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009).[7] Therefore, Mr. Abulkhair's claims against the State, the OAE, and the individual defendants in their official capacities fail because of sovereign immunity and the NJTCA.

As to the three individual defendants in their individual capacities, Mr. Abulkhair's claim of negligent infliction of emotional distress fails to state a claim under Rule 12(b)(6). The elements of such a claim are well established:

> [A plaintiff] can maintain an independent cause of action for negligent infliction of emotional distress where (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory

---

[7]     Even setting aside the Eleventh Amendment, the amended complaint fails to articulate any clear basis to find a waiver under the NJTCA, which generally immunizes public entities from liability for an injury arising out of any act or omission by the entity, a public employee, or any other person. N.J. Stat. Ann. § 59:2-1; *see Greenway Dev. Co., Inc. v. Borough of Paramus*, 750 A.2d 764 (N.J. 2000).

and contemporaneous observation of the death or injury at the
scene of the accident; and (4) the plaintiff suffered severe emotional
distress.... [A plaintiff can also maintain a negligent infliction of
emotional distress claim were he] can demonstrate that the
defendant's negligent conduct placed the plaintiff in reasonable
fear of immediate personal injury, which gave rise to emotional
distress that resulted in a substantial bodily injury or sickness.

*Jablonowska v. Suther*, 948 A.2d 610, 617-18 (N.J. 2008); *see also Portee v. Jaffee*, 417 A.2d 521 (N.J. 1980).

The allegations of the amended complaint do not approach this threshold of outrageous conduct. He does not claim that defendants injured an individual to whom he was personally close; he does not claim a sensory and contemporaneous observation of death or injury at the scene of an accident; he does not claim to have been placed in reasonable fear of immediate personal injury.

The claim for negligent infliction of emotional distress is dismissed.

## IV.     MOTION FOR DEFAULT JUDGMENT AND MOTION TO STRIKE DEFENDANTS' ANSWER

Mr. Abulkhair has cross-moved for entry of default and for the court to strike defendants' answer.[8] That motion will be denied.

Mr. Abulkhair filed his amended complaint on June 23, 2017. (The amended complaint, recall, added the individual defendants, Centinaro, Ross, and Granuzzo.) (AC). Defendants received an extension to respond, until July 28, 2017. (ECF No. 26). On August 2, 2017, defendants received a 30-day extension. (ECF No. 29). Defendants filed their motion to dismiss on September 21, 2017, which was beyond the 30-day extension. (ECF No. 36).

Mr. Abulkhair's cross-motion is denied. As to the State and the OAE, there was no default. They had long ago appeared in the case. True, there was a 20-day delay in filing the motion to dismiss. For such tardiness, which had

---

[8]     There is no answer filed to the amended complaint. The reference may be to the motion to dismiss.

already been remedied at the time Mr. Abulkhair filed his cross-motion, entry of default is not appropriate. This short delay is excused.

As to Centinaro, Ross, and Granuzzo, service had not been accomplished at the time of the motion to dismiss or at the time of the cross-motion. (ECF Nos. 53-57). Indeed, it still has not been accomplished. (*See* ECF No. 57.) Under Federal Rule of Civil Procedure 55, a default judgment can be entered only where there has been proper service. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1303-04 (3d Cir. 1995).

Mr. Abulkhair's motion for entry of default and to strike defendants' answer is denied.

## V.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted and the amended complaint is dismissed.

As to the State of New Jersey and the OAE, this is defendant's second unsuccessful attempt to file a viable complaint. I conclude that further amendment would be futile, and the dismissal is therefore with prejudice.

As to the individual defendants, Centinaro, Ross, and Granuzzo, who were named for the first time in the amended complaint, the dismissal is without prejudice to the filing, within 30 days, of a second amended complaint that remedies the deficiencies identified in this opinion.


Dated: March 15, 2018


KEVIN MCNULTY
United States District Judge